# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MEGAN NELSON,<br><br>   Plaintiff,<br><br>   v.<br><br>DET. BRYAN LUTZOU, *et al.*,<br><br>   Defendants. | Case No. 16 C 6962<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Defendants Bryan Lutzou and the City of Chicago move for Summary Judgment [ECF No. 42]. For the reasons stated herein, Defendants' Motion is denied.

## I. BACKGROUND

Ms. Megan Nelson ("Nelson" or "Plaintiff"), an AmeriCorps tutor at Richards Career Academy ("Academy"), files suit under 42 U.S.C. § 1983 against Defendants Detective Bryan Lutzou ("Lutzou" or "Defendant") and the City of Chicago. (*See generally* Compl., ECF No. 1.) Nelson claims Defendant violated her Fourth and Fourteenth Amendment rights by arresting her without probable cause. (*Id.*)

The arrest at issue in this case arose from an investigation conducted by Defendant Lutzou. Lutzou was assigned to investigate a claim by B.G. (Pl. Resp. to Defs. Statement of Facts ("SOF")

¶ 2, Dkt. No. 55), a 15-year-old sophomore student at the Academy. (SOF ¶ 15.) B.G. was a resident of SOS Children's Villages ("SOS"), a halfway home for troubled youth, when two SOS employees overheard B.G. telling friends that a teacher kissed him. (SOF ¶ 18.) One of those employees called the Department of Children and Family Services ("DCFS") to report the possible sexual interaction, resulting in a separate DCFS investigation. (SOF ¶ 19.) DCFS then notified Lutzou, who began the criminal investigation. (SOF ¶ 2.) Lutzou's investigation lasted from January 22, 2016 until May 10, 2016, when Lutzou arrested Plaintiff Nelson. (Defs. Resp. to Pl. Statement of Additional Material Facts ("SOAMF") ¶¶ 7, 15, Dkt. No. 58.) During the first week of the investigation, B.G. made four separate statements: one to the SOS employees, one to the DCFS investigator, one to Lutzou, and one to both Lutzou and the State's Attorney. (SOAMF ¶¶ 14-16.)

In these statements, B.G. generally described Nelson as having approached him several times, touched his thigh and kissed him while watching a movie alone with him, and hugged him at a later pizza party. (SOAMF ¶¶ 14-16.) After Lutzou completed both interviews of B.G., Lutzou decided to continue the investigation further rather than arrest Nelson right away. (SOAMF ¶ 18.) In the subsequent four months, Lutzou interviewed several witnesses, including the two SOS employees, two other AmeriCorps tutors, two

Academy students, and B.G.'s bus driver. (SOF ¶¶ 53-63.) Five of the seven are eye-witnesses, having witnessed B.G. and Nelson interact first-hand during the times mentioned in B.G.'s statement. The remaining two witnesses—the SOS employees—base their knowledge solely on what B.G. told them. Each will be discussed in turn.

The Court first turns to the two SOS employees. One employee stated she believed B.G.'s statement given his ability to "repeat[] the same thing multiple times." (SOF ¶ 22.) The other employee believed B.G.'s statement for similar reasons but described B.G. as a liar who "could not keep a story straight if you gave him a ruler," (SOF ¶ 23.) Both employees based their beliefs on personal knowledge of B.G. and what B.G. told them, (SOF ¶¶ 18-24), though neither witnessed first-hand any interactions between Nelson and B.G. (SOF ¶¶ 18-24).

The Court turns next to the two AmeriCorp tutors. Lutzou's interview revealed that the tutors were, for the most part, present when B.G. and Nelson interacted. Both told Lutzou that they never saw or heard anything inappropriate occur between B.G. and Nelson. (SOAMF ¶¶ 25-26.) Both were initially present when B.G. and Nelson watched a movie together and Nelson allegedly kissed B.G. (SOF ¶ 29.) One tutor recalled Nelson and B.G. watching the movie with more than a foot in distance between them, (SOF ¶ 6), and the other

tutor informed Lutzou that she and Nelson were out buying pizza at the time Nelson allegedly kissed B.G. (SOAMF ¶ 25.) At another time, one tutor also witnessed Nelson giving B.G. a side hug at a pizza party, (SOAMF ¶ 25), which is acceptable under school policy so long as in the presence of others. (SOF ¶ 36.)

The Court turns finally to the two other Academy students and B.G.'s bus driver. B.G. referred to the two students as being present during his interactions with Nelson. (SOAMF ¶¶ 14-16.) In the interview with Lutzou, one such student recalls a "pinky promise" exchange between Nelson and B.G. (SOAMF ¶ 20.) The other does not recall any interaction with B.G. at the pizza party. (SOAMF ¶ 21.) In Lutzou's interview of B.G.'s bus driver, Lutzou referred to B.G.'s statement. B.G. said he had informed the bus driver that Nelson kissed him, and, in response, the bus driver accused him of being a liar. (SOAMF ¶ 19.) To Lutzou, the bus driver denied both hearing the story and calling B.G. a liar. (SOAMF ¶ 19.)

It was not until after Lutzou completed the foregoing interviews that he decided to call Nelson in for questioning. Then, upon arrival at the station on May 10, 2016 for said questioning, Lutzou arrested Nelson. (SOAMF ¶¶ 20-31.)

## II. ANALYSIS

Under 42 U.S.C. § 1983, Plaintiff Nelson alleges that Defendant Lutzou falsely arrested her, violating her constitutional rights. Defendant Lutzou rebuts that, contending he had probable cause for the arrest, and, regardless of the probable cause determination, is immune from suit under the qualified immunity doctrine. Defendant City of Chicago is named for indemnification purposes. Defendants Lutzou and the City of Chicago move for summary judgment on all counts.

### A. Standard of Review

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is "material" if it is one identified by the law as affecting the outcome of the case. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The Court must construe all facts and reasonable inferences in the light most favorable to the non-moving party. *Abdullahi v. City of Madison,* 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson,* 477 U.S. at 255).

### B. Probable Cause

"[T]he existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution[.]" *Schertz v. Waupaca Cnty.,* 875 F.2d 578, 582 (7th Cir. 1989) (citation omitted). An officer has probable cause to arrest when "the totality of the facts and circumstances within his knowledge and of which he has reasonably trustworthy information is sufficient that a prudent person would believe that the suspect committed or was committing an offense." *Marshall v. Teske,* 284 F.3d 765, 770 (7th Cir. 2002) (citing *United States v. Sawyer,* 224 F.3d 675, 678-79 (7th Cir. 2000)). Moreover, probable cause must exist "at the moment the arrest was made." *Tangwall v. Stuckey,* 135 F.3d 510, 518 (7th Cir. 1998) (citation omitted). Finally, if "there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them," the question of probable cause must be submitted to the jury. *Gonzalez v. City of Elgin,* 578 F.3d 526, 536 (7th Cir. 2009).

Defendant asserts that B.G.'s statement, alone, is sufficient to establish probable cause, citing *Reynolds v. Jamison,* 488 F.3d 756, 765 (7th Cir. 2007), *Woods v. City of Chicago,* 234 F.3d 979, 996 (7th Cir. 2002), and *Spiegel v. Cortese,* 196 F.3d 717, 726 (7th Cir. 1999). These cases support the proposition that probable

cause exists when a victim positively identifies the suspect, and the police have no reason to disbelieve the victim. However, in each of those cases, the arrest occurred immediately after the victim provided the incriminating statement. *See, e.g., Reynolds,* 488 F.3d at 759 ("Later that same day, after reviewing the information he had gathered, [defendant officer] questioned [plaintiff] and arrested him for telephone harassment."); *Woods,* 234 F.3d at 996 ("[T]he arresting officers arrested [plaintiff] after [the victim] made out a criminal complaint against him, claiming that [plaintiff] had brandished a lead pipe and threatened to kill [the victim]."); *Spiegel,* 196 F.3d at 720-21 (Finding probable cause for arrest occurring same day the victim reported the altercation and provided photographs of an injury).

Moreover, the Seventh Circuit has held that absent exigent circumstances, a witness's statement can be insufficient to establish probable cause if further reasonable investigation would undermine the statement. *See BeVier v. Hucal,* 806 F.2d 123, 128 (7th Cir. 1986) (finding that defendants lacked probable cause for an arrest when simple questions would have led to important information exonerating plaintiffs from the alleged crime); *Moore v. The Marketplace Restaurant,* 754 F.2d 1336, 1345-1346 (7th Cir. 1985) (holding that officers did not have probable cause despite

witness's complaint because arrest could have been avoided if a proper investigation had been conducted).

Here, B.G. provided a statement to Lutzou in January, but Nelson was not arrested until May. In the interim, Lutzou continued his investigation and more of the story unfolded. Taken in the light most favorable to the Plaintiff, Defendant may have had probable cause to arrest Nelson at the time B.G.'s statement was provided, but these subsequent findings diminished the original probable cause determination. *See BeVier v. Hucal,* 806 F.2d 123, 128 (7th Cir. 1986) ("A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest."). Lutzou uncovered no new evidence to further implicate Nelson. In fact, his investigation revealed more to bolster Nelson's defense against the alleged misconduct. A handful of witnesses provided exculpatory information to Lutzou. Some witnesses contradicted B.G.'s statement, others informed Lutzou they had never seen Nelson behave inappropriately towards B.G. during the relevant time. One witness even claimed to be with Nelson buying pizza at the time Nelson allegedly kissed B.G.

Despite all this evidence undermining B.G.'s statement and contradicting his credibility, however, Lutzou proceeded to arrest Nelson. In light of that, a reasonable jury could find that Lutzou lacked probable cause to arrest Nelson.

## C. Qualified Immunity

The Court next addresses whether Defendants are entitled to qualified immunity. Qualified immunity shields government officials from liability for performing discretionary actions within their official capacity so long as the actions do "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Eversole v. Steele,* 59 F.3d 710, 717 (7th Cir. 1995) (internal quotation marks and citations omitted). The doctrine allows "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant,* 502 U.S. 224, 229 (1991). Moreover, the immunity is available for "officers who make a reasonable error in determining whether there is probable cause to arrest an individual." *Chelios v. Heavener,* 520 F.3d 678, 691 (7th Cir. 2008).

Qualified immunity applies unless: (1) the facts, taken in the light most favorable to the plaintiffs, show the violation of a federal constitutional right, and (2) the constitutional right was clearly established at the time of the alleged violation. *Pearson v. Callahan,* 555 U.S. 223, 129 (2009); *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Plaintiffs have the burden of showing that the constitutional right was clearly established. *Purtell v. Mason,* 527 F.3d 615, 621 (7th Cir. 2008). They can meet this

burden by showing either "a clearly analogous case establishing a right to be free from the specific conduct at issue" or that "the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Smith v. City of Chicago,* 242 F.3d 737, 742 (7th Cir. 2001). Lastly, "[w]hen the qualified immunity inquiry cannot be disentangled from disputed facts, the issue cannot be resolved without a trial." *Gonzalez,* 578 F.3d at 540 (citing *Clash v. Beatty,* 77 F.3d 1045, 1048 (7th Cir. 1996)).

As this Court has discussed, taking the facts in the light most favorable to the Plaintiff, a prudent person in Lutzou's position would not believe Nelson had committed a crime establishing probable cause for her arrest. *See Ornelas v. United States,* 517 U.S. 690, 696 (1996); *Smith v. Ball St. Univ.,* 295 F.3d 763, 768 (7th Cir. 2002). Lutzou's investigation revealed ample evidence contradicting B.G.'s statement and questioning B.G.'s credibility, as well as exculpating Nelson at the alleged time of unlawful activity. In light of this evidence, a reasonable jury could find that Defendant lacked probable cause at the time of Nelson's arrest and thus, violated her constitutional rights. Moreover, that right has been clearly established for decades. *See Marshall ex rel. Gossens v. Teske,* 284 F.3d 765, 772 (7th Cir. 2002); *Jenkins v. Keating,* 147 F.3d 577, 585 (7th Cir. 1998);

*United States v. Gilbert,* 45 F.3d 1163, 1166 (7th Cir. 1995); *Simkunas v. Tardi,* 930 F.2d 1287, 1291 (7th Cir. 1991).

The Defendants are thus not entitled as a matter of law to qualified immunity. However, if the jury accepts the Defendants' account of the facts and determines Lutzou had probable cause, Defendants may still prevail on the merits.

### D. Indemnification

Nelson also brings an indemnification claim against the City of Chicago, which goes unmentioned in Defendants' briefing. Because Defendants moved for summary judgment in full, however, the Court will address the claim here. As established above, Defendant is not entitled to qualified immunity. Given that Plaintiff's constitutional claim proceeds to trial, there is no basis for the Court to grant summary judgement on the indemnification claim.

### III. CONCLUSION

For the reasons stated herein, the Court denies Defendants' Motion for Summary Judgment. (ECF No. 42.)

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　　　　United States District Court

Dated: 9/11/2018